Clinton Rooney (SBN 221628)
Rooney & Lickel
1102 Cesar Chavez Parkway
San Diego, CA 92113
Phone: (858) 952-1033
Fax: (619) 546-0792

Attorneys for Plaintiff Jonathan Reed

SUPERIOR COURT OF CALIFORNIA-COUNTY OF SAN DIEGO

CENTRAL COUNTY DIVISION

| | |
|---|---|
| Jonathan Edward Reed,<br><br>    Plaintiff,<br><br>vs.<br><br>Val-Chris Investments, Inc., a California Corporation; Rene Conte, an individual, doing business as G&R Financial Services; Greg Conte, an individual doing business as G&R Financial Services; Advance Inheritance, LLC, a Delaware limited liability company; Marion Lawrence, an individual; James Leestma, an individual; Craig Lanser, an individual; Ress Financial Corporation, a California corporation; and DOES 1-100, inclusive,<br><br>    Defendants. | CASE NO. 37-2011-00085199-CU-OR-CTL<br><br>VERIFIED COMPLAINT FOR DECLARATORY RELIEF RESCISSION, AND DAMAGES ARISING FROM:<br><br>1. Violation of the Truth in Lending Act and Home Ownership Equity Protection Act;<br>2. Breach of Escrow Duties;<br>3. Violation of the Truth in Lending Act and Home Ownership Equity Protection Act;<br>4. Violation of the California Predatory Lending Act;<br>5. Violation of California's Real Estate Licensing Regulations;<br>6. Fraud, Fraudulent Concealment and Negligent Misrepresentation;<br>7. Breach of Fiduciary Duties;<br>8. Constructive Fraud;<br>9. Negligence;<br>10. Violation of the "ROSENTHAL ACT";<br>11. Violation of the Federal Fair Debt Collections Practices Act;<br>12. Fraudulent, Deceptive and Unlawful Business Practices;<br>13. Rescission of Contract;<br>14. Declaratory Relief; and<br>15. Injunctive Relief (including TRO). |

Plaintiff Jonathan Edward Reed submits this complaint for Damages and Other Appropriate Equitable Relief, alleging as follows:

## I. INTRODUCTION

1. This is a case of predatory lending, in which the Defendants conspired to take for themselves excessive fees, interest, and substantial equity in Plaintiff's primary residence without following the requirements of the Truth in Lending Act, the Home Ownership Protection Act, or the California Predatory Lending Act. These consumer protection laws are to be liberally construed to avoid predatory lenders from taking advantage of consumers as was done in this case. The purpose of the transactions involved in this case was to refinance property taxes owed on Plaintiff's primary residence so he could continue living in his home, an obvious consumer purpose.

2. Plaintiff's father passed away in 2003 and Plaintiff was the sole heir of his father with a vested ownership interest in his home located at 6432 Radio Drive, San Diego, Ca. 92114. Afterward Plaintiff moved into the home. He has been living there since about 2008 and intends to continue living there. He is now about 21 years old, has no college or high school degree and is financially unsophisticated.

3. In early 2010, when Plaintiff was facing the loss of the property in a tax lien sale, the Defendants conspired to take away Plaintiff's substantial equity in the home in a two step process. First, a company called Advance Inheritance, LLC made a mortgage loan in the amount of $35,000.00 (the "First Mortgage Loan"). According to the terms, if the loan was paid off within five months (July 2010) the interest charge was fixed at $7000.00 which translates into an annual percentage yield of at least 48.0%.

4. The second step, was initiated at the same time as the first by the "lending arm" of Advance Inheritance, LLC to obtain a second mortgage loan to pay off the first within five months. Since the amount of interest that Advance Inheritance, LLC could earn was fixed at $7,000.00 regardless of when it was paid back prior to July 2010, Advance Inheritance, LLC and its "lending arm", G&R Financial Services had a motive to refinance Plaintiff as quickly as possible. The Defendants actually arranged for the loan to be paid off in April 2010 only two months after the First Mortgage Loan was made. No disclosures were made regarding the annual percentage yield

that Defendants stood to earn in the First Mortgage Loan, but it was at least 48.0%.

5. The Second Mortgage Loan was made by Val Chris Investments, Inc. and an individual, Lawrence Marion. In connection with the Second Mortgage Loan, Defendant Val Chris Investments, Inc. also assumed a fiduciary relationship with Plaintiff by agreeing to act as Plaintiff's agent and representative in finding an investor, which it did in Defendant Lawrence Marion. The Second Mortgage Loan was framed as a loan with a "business purpose", in the form of a "refi" for the "Estate of Ronald Reed" when in reality it was a refinance of the property tax payoff made for the purpose of allowing Plaintiff to continue living in his home, a patent consumer purpose.

6. Defendants took these steps all along knowing or simply not caring that Plaintiff did not have the ability to make the loan payments. For example, Greg Conte of G & R Investment Services told Plaintiff in a letter requesting him to fill out a loan application, "Administrator loans do not require much paperwork as they are mostly equity based." After talking with Plaintiff about his financial situation, Defendant James Leestma told Plaintiff not to worry about filling out the income section and to leave that to him.

7. As should have been expected, Plaintiff has been financially unable to make any of the payments and Defendants, having already received excessive fees, now stand to gain all the equity in Plaintiff's home. Plaintiff went from owing $28,000.00 in property taxes on his home to now owing $85,000.00 and facing the loss of the home. He only received cash out in the amount of about $8,200.00.

8. Plaintiff seeks rescission of both loans under the Truth in Lending Act on the ground that the home was his primary residence and his ownership interest in the dwelling was or did become subject to the security interest. Regulation Z, 12 C.F.R. § 226.2 (a) (11). Plaintiff also seeks statutory and actual damages pursuant to the Home Ownership Equity Protection Act, the California Predatory Lending Act and common law causes of action.

## II.   PARTIES

9. Plaintiff, is now and at all times relevant to this action has lived at a residence in the city of San Diego, County San Diego, State of California located at 6432 Radio Drive, San Diego, Ca. 92114 ("Subject Residence"). Plaintiff's ownership interest in the home was confirmed by

order issued in the probate court proceeding of his father, Ronald Peter Reed, Case No. P184184 and recorded on or about October 5, 2010. The Court order is attached hereto as **Exhibit 1** and incorporated herein by this reference. At all times relevant to this case, Plaintiff was his father's sole heir with a vested ownership interest in the home and was appointed administrator by the Court in his father's probate proceeding.

10. Defendant Craig Lanser is and at all times relevant herein was a resident of the County of San Diego and State of California. Prior to the events in this case he was a licensed real estate broker who had his real estate license revoked on or about June 1, 2003. Craig Lanser purported to act on behalf of Plaintiff as a consultant in connection with the real estate finance transactions involved in this case and received a commission from each of the transactions, which he was prohibited by law from receiving.

11. Plaintiff is informed and believes that Defendant Advance Inheritance, LLC is a California limited liability company doing business in the County of San Diego in the state of California brokering and financing advances on inheritances secured by real property.

12. Plaintiff is informed and believes and based thereon alleges that Defendants Rene Conte and Greg Conte were doing business as G & R Financial Services at all times relevant herein under a California Finance Lender's license issued by the state of California with license number 6038613 (collectively "Defendant G & R Financial Services"). Plaintiff is informed and believes that these defendants were affiliated with Advance Inheritance, LLC.

13. Plaintiff is informed and believes and based thereon alleges that Defendant Val-Chris Investments, Inc. is and at all times relevant herein was a Delaware Corporation with its principal place of business in Los Angeles, California. Plaintiff is informed and believes and based thereon alleges that Defendant Val-Chris is and at all times relevant herein was doing business in the County of San Diego brokering and financing hard money loans. Val Chris acted as both a broker and lender in the Second Mortgage Loan and played the role of a dual agent owing fiduciary obligations to Plaintiff.

14. Plaintiff is informed and believes and based thereon alleges that Lawrence Marion is an at all times relevant herein was a resident of the State of California doing business in the County

of San Diego as a hard money lender. Plaintiff is informed and believes and based thereon alleges that Marion Lawrence provided the proceeds of the $85,000.00 Second Mortgage Loan and was already known to Defendants at the time the Second Mortgage Loan closed.

15. Plaintiff alleges based on information and belief that Defendant Ress Financial Corporation ("Defendant Ress"), is a California corporation doing business in California. Plaintiff is informed and believes that Defendant Ress is assisting Defendants Val Chris and Marion with the foreclosure process that has been initiated against Plaintiff.

16. Plaintiff is ignorant of the true names and/or capacities of other defendants sued herein as DOES 1-100, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

17. Plaintiff alleges on information and belief that each of the fictitiously named defendants is responsible in some manner for the damages sustained by Plaintiff, and that such damages were proximately caused by such defendants acting in concert as either agents, representatives, employees acting within the course and scope of agency and employment, or co-conspirators or co-defendants, in doing, or participating in, the wrongful activities herein alleged.

## II. GENERAL ALEGATIONS

18. Plaintiff's father passed away in March 2003. A probate case was subsequently filed and as of the beginning of 2010 the only asset to be distributed by the probate court was the Subject Residence.

19. In the beginning of 2010, approximately $28,573.88 in property taxes were owed to the County of San Diego tax assessor as property taxes on the Subject Residence and a tax sale was scheduled for February 26, 2010. The home has been Plaintiff's primary residence since about 2008 or early 2009.

20. Craig Lanser, a purported friend of Plaintiff's mother, became involved with Plaintiff under the pretext of assisting Plaintiff with avoiding the loss of the home, but in reality intending to earn fees for himself. In or about late January or early February 2010, Defendant Lanser told Plaintiff that he would make arrangements for a loan to pay off the property taxes owed for the home in exchange for a payment of $10,000.00. He said that he would receive the payment in

exchange for an equity sharing arrangement that Plaintiff did not understand. Later in about March 2010, Defendant Lanser again told Plaintiff that he should receive $10,000.00 out of the Second Mortgage Loan, discussed below, as a consultant fee.

21. Plaintiff is unsophisticated in financial and legal matters. He does not have a college or high school degree. He did not understand what role, if any, that Defendant Lanser played in the transactions described in this case.

22. As a first step, Craig Lanser handed Plaintiff a phone book and instructed him to call for a probate attorney. As a result, Plaintiff found attorney Ron Detzer to assist with his father's probate case.

23. On or about January 29, 2010, James Leestma of Advanced Inheritance LLC spoke with Plaintiff to arrange a loan in the amount of $35,000.00 that was to be given to Jonathan Reed to pay the property taxes owed on the Subject Residence. On the same day, Mr. Leestma sent a package of documents to Plaintiff for him to sign in order to receive the advance.

24. On the same day, Greg Conte of G & R Financial Services also sent a letter to Plaintiff stating that G & R Financial Services is "the lending arm for Advance Inheritance" and enclosing a loan application for Plaintiff to complete. In the letter, Mr. Conte also stated, "Administrator Loans do not require much paperwork as they are mostly equity based." Mr. Conte instructed Plaintiff to complete the "highlighted" areas of the enclosed loan application and sign and initial where indicated. Mr. Conte did not highlight the section entitled, "V. Monthly Income and Combined Housing Expense Information." A true and correct copy of this letter is attached as **Exhibit 2**.

25. The purpose of the G&R Financial Services loan application was to obtain a loan that would refinance Plaintiff out of the first loan by Advance Inheritance, LLC, that was to be used to pay off the property taxes on the Subject Residence.

26. On about February 17, 2010, Plaintiff signed the documents sent by Advance Inheritance, LLC in the presence of a Notary. Also signed was a letter instructing Advance Inheritance, LLC to send the entire $35,000.00 to his attorney Ronald Detzer so that the attorney could pay the property taxes out of that amount. The letter was also signed by a notary. A true and

correct copy of the letter is attached as **Exhibit 3** and incorporated herein by this reference.

27. Among the documents signed by Plaintiff was an assignment of beneficial interest in decedent's estate and a deed of trust granting a security interest to Advance Inheritance, LLC to guarantee the repayment of the loan by forced sale of the Subject Residence. The deed of trust was signed by Jonathan E. Reed, Individually and as Administrator of the Estate of Ronald P. Reed. A true and correct copy of the deed of trust is attached as **Exhibit 4** and is incorporated herein by this reference. A true and correct copy of the assignment of beneficial interest is attached as **Exhibit 5** and is incorporated herein by this reference.

28. In addition, Plaintiff was asked to sign an arbitration agreement between Plaintiff and Advance Inheritance, LLC that did not provide Plaintiff with any benefit.

29. Plaintiff did not understand the arbitration agreement contained therein. At the time that Plaintiff signed the document it was his understanding that the arbitration agreement was not optional. No one told him that he could refuse to sign the arbitration agreement and still get the loan. He did not know that signing the agreement could result in the loss of his right to have this case decided by a Federal or State judge or jury.

30. Plaintiff is informed and believes and based thereon alleges that the arbitration agreement between Plaintiff and Advance Inheritance, LLC is unconscionable both procedurally and substantively and on these grounds is also unenforceable. Plaintiff is also informed and believes that the arbitration agreement is unenforceable.

31. Plaintiff is informed and believes and based thereon alleges that on or about February 22, 2010, Advance Inheritance, LLC disregarded Plaintiff's instructions to have the $35,000.00 paid to his probate attorney Ron Detzer and instead made a direct payment to the County of San Diego Tax Collector. Plaintiff is informed and believes that Advance Inheritance, LLC claims that it paid the tax collector the approximate amount of about $30,457.09, which included a payment for taxes due in 2010, but not yet past due.

32. In addition, also in disregard for Plaintiff's notarized instructions, Advance Inheritance, LLC made a payment to Craig Lanser in the amount of $4,517.91 pursuant to a document that Craig Lanser convinced Plaintiff sign. The document was altered after by Defendant

Lanser after he induced Plaintiff to sign it and it was not notarized. At the time that this document was signed, Craig Lanser told Plaintiff that he should get some money for himself since he was helping put the transaction together. Plaintiff was not aware that Craig Lanser was going to receive as much as $4,517.91 from the transaction.

33. Plaintiff is informed and believes and based thereon alleges that on or about February 18, 2010, G & R Financial Services set up an escrow account with North American Title Company located in Woodland Hills, California even before the First Mortgage Loan proceeds were disbursed.

34. Plaintiff is informed and believes and based thereon alleges that Defendant G & R Financial Services contacted Defendant Val-Chris regarding the possibility of making a loan to pay off the First Mortgage Loan given to Plaintiff.

35. On or about April 7, 2010, Plaintiff was presented with and signed legal documents prepared by the escrow company North American Title Company and by Val Chris Investments, Inc.

36. A true and correct copy of the Borrower's Estimated Settlement statement dated April 7, 2010 for the Second Mortgage Loan is attached as **Exhibit 6.** A true and correct copy of the Mortgage Loan Disclosure Statement dated April 7, 2010 for the Second Mortgage Loan is attached as **Exhibit 7**. A true and correct copy of the Final Settlement Statement dated April 26, 2010 received by Plaintiff is attached hereto as **Exhibit 8.**

37. The loan funding fee paid to Val Chris Investments, Inc. in the amount of $350.00, which is shown on all three of these documents, should have been included in the finance charge calculation disclosed on the TILA disclosure statement for the Second Mortgage Loan, and was not. 12 C.F.R. 226.4(a). A true and correct copy of the TILA Disclosure Statement is attached hereto as Exhibit 15.

38. The appraisal fee paid to James Leestma and Advance Inheritance, LLC should have been included in the finance charge of the Second Mortgage Loan, and was not. 12 C.F.R. § 226.4(b)(6). Plaintiff is informed and believes and based thereon alleges that the Defendant Advance Inheritance, Inc. required $400.00 to be paid to Advance Inheritance, LLC as a condition for releasing the Advance Inheritance, LLC Lien on the property.

39. However, by the terms of the assignment, this fee was not owed to Advance

Inheritance, LLC. In connection with the First Mortgage Loan, Advance Inheritance, LLC promised that it would pay all transaction costs. (See Exhibit 5, ¶2.) Plaintiff is informed and believes and based thereon alleges that the appraisal fee was for an appraisal of the property done in connection with the First Mortgage Loan.

40. Plaintiff has never seen the appraisal apparently paid for by James Leestma.

41. The $10,000.00 paid to Craig Lanser was taken by Craig Lanser in violation of California law for the purpose of covering his "consultant services" in connection with the loan which were really broker services. This amount should never have been paid to Craig Lanser. Given that it was a charge for "broker" services, even if illegal due to Defendant Lanser's unlicensed status, the charge should have been included in the finance charge of the Second Mortgage Loan, and was not. 12 C.F.R. §226.4(a)(3); Official Staff Commentary 226.23(h)(1)(i)-1.

42. Each of the amounts which should have been included in the finance charge calculation of the Second Mortgage Loan, but were not, all exceed the error tolerance level of $35.00 allowed by the Truth in Lending Act for the finance charge disclosure. 15 U.S.C. §1635(i)(2).

43. On April 7, 2010, Plaintiff was also asked to sign a document entitled CERTIFICATE OF BUSINESS PURPOSE OF LOAN, which stated that the purpose of the loan was a "Refi" and that "the primary purpose of the Loan is to finance the business enterprise known as Estate of Ronald Reed . . ."

44. However, Plaintiff was not aware of the significance of the statements contained in this document other than that he had to sign the document in order to get the loan. It was simply not true that the estate of Ronald Reed was a business entity. While the document correctly states that the primary purpose was a refinance of the First Mortgage Loan owed to Advance Inheritance, LLC, the primary purpose of the First and Second Mortgages was to pay property taxes on Plaintiff's primary residence so that he could continue living in the Subject Residence, which is a consumer purpose. All the Defendants were aware that this primary purpose was a consumer purpose as the purpose was personal or household in nature.

45. Also among the documents signed by Plaintiff on April 7, 2010 was an Agreement to

Procure A Loan & Lender Borrower Escrow Instructions prepared by Val-Chris Investments, Inc. ("Val-Chris Agency Agreement"). A true and correct copy of the Val-Chris Agency Agreement is attached as **Exhibit 9**.

46. The Val Chris Agency Agreement states, "Borrower gives to Company the exclusive right to obtain the LOAN for BORROWER. The exclusive right begins on 04/01/2010 and ends on 05/01/2010. COMPANY will use its best efforts to obtain a LENDER, who will execute this AGREEMENT and make the LOAN. . . . COMPANY'S representation and agency with BORROWER shall completely end upon the later of (a) expiration or other termination of this AGREEMENT or (b) completion of the LOAN, including the close of the loan escrow and the delivery of all DOCUMENTS and funds BORROWER has instructed COMPANY to deliver."

47. The Val Chris Agency Agreement also contained an arbitration clause. The arbitration clause stated as follows: "Without waiving a party's right to arbitration, any party may seek judicial relief to: (a) enforce the assignment of rents provision contained in the deed(s) of trust securing the LOAN, including the appointment of a receiver; (b) secure possession of the PROPERTY by an action for unlawful detainer; or (c) commence an action in interpleader for the sole purpose of resolving conflicting claims to funds or DOCUMENTS delivered in escrow. Any proceeding for judicial foreclosure shall not be subject to arbitration. The exercise of the power of sale contained in the deed of trust securing the LOAN, or the exercise of any private default remedies under the California Commercial Code shall not constitute a waiver of this Agreement nor shall they be deemed inconsistent with arbitration."

48. As a result, the arbitration agreement contained in the Val Chris Agency Agreement is completely one sided in that it allows Val Chris Investments, Inc. to pursue all remedies it might need in connection with the transaction in state court while limiting Plaintiff only to arbitration. Plaintiff did not understand the arbitration agreement when he signed the Val Chris Agency Agreement and was not even aware of its existence.

49. At the time that Plaintiff signed the Val Chris Agency Agreement, it was Plaintiff's understanding that he could not get the loan without agreeing to all terms contained in the documents that were presented to him. He was not aware at that time that there was an arbitration

clause contained in it. No one told him that he could refuse to sign any of the loan documents and still get the loan.

50. Plaintiff is informed and believes and based thereon alleges that the arbitration agreement between Plaintiff and Val Chris Investments, Inc. is unconscionable both procedurally and substantively and on these grounds is also unenforceable.

51. Also on April 7, 2010, Plaintiff signed a promissory note and a deed of trust to secure it. The promissory note required that interest payments be made in the amount of 11.99% monthly and that at the end of three years the principal balance be paid back in the amount of $84,823.64. A true and correct copy of the promissory note is attached hereto as **Exhibit 10** and incorporated herein by this reference. A true and correct copy of the deed of trust is attached hereto as **Exhibit 11** and incorporated herein by this reference.

52. The second loan was closed some time in April 2010. Plaintiff was legally bound to make the loan on or about April 7, 2010 when he signed the deed of trust, promissory note and other loan documents. An assignment of the deed of trust was executed in favor of Lawrence Marion on or about April 22, 2010 by Chris Boulter, an agent of Defendant Val Chris. A true and correct copy of the assignment of the deed of trust is attached as **Exhibit 12**.

53. All of the transaction documents, including both the deed of trust and assignment of deed of trust, were recorded on the same day, April 26, 2010.

**FIRST CAUSE OF ACTION**

**VIOLATION OF AND RESCISSION UNDER THE TRUTH IN LENDING ACT**

(15 U.S.C. §§ 1601 *et seq.*)

[As to DEFENDANT ADVANCE INHERITANCE, LLC AND CERTAIN DOES]

54. Plaintiff incorporates by reference each preceding paragraph as if it were fully set forth herein.

55. At the time that the First Mortgage Loan was made to Plaintiff, Plaintiff was the equitable owner of the Subject Residence in that he was the sole heir of his father with a vested ownership interest in the Subject Residence. The Subject Residence was also his primary residence.

56. The payment of $35,000.00 to Plaintiff by Advance Inheritance, LLC was a mortgage

loan paid to Plaintiff and for his benefit in order to pay off property taxes that were secured by the Subject Residence (the "First Mortgage Loan").

57. Plaintiff is a consumer in connection with the First Mortgage Loan in that he is a natural person and he was using the subject residence as his primary residence and expected to continue to do so after receiving the distribution of title from the probate court.

58. In order to receive the money, Plaintiff was required to sign the assignment of beneficial interest attached as Exhibit 5, which stated that the money would be repaid with interest in the amount of $42,000.00 if repaid on or before July 30, 2010 or $50,000.00 if repaid after that date.

59. Plaintiff was also required to sign over a deed of trust, previously referred to as Exhibit 4, securing the First Mortgage Loan that gave Advance Inheritance, LLC the right to sell the Subject Residence in non-judicial foreclosure if payment was not received.

60. The mortgage loan made by Advance Inheritance, LLC was a high rate mortgage within the meaning of the Home Ownership and Equity Protection Act (hereinafter "HOEPA"), a subsection of the Truth in Lending Act ("TILA"), (15 U.S.C. §§1601 *et seq.*), in that the annual percentage rate at consummation of the transaction exceeded by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor.

61. In particular, Advance Inheritance, LLC expected to earn interest of $7,000.00 in a period of five months, which translates into an annual percentage yield of 48.0% which exceeds the yield on Treasury securities having a comparable period of maturity at that time.

62. Defendant Advance Inheritance, LLC was a creditor pursuant to HOEPA in that this Defendant gave the loan through a broker, albeit unlicensed, namely Craig Lanser, and/or Plaintiff is informed and believes that Defendant Advance Inheritance, LLC has done more than one loan covered by HOEPA within a year of this transaction.

63. Plaintiff alleges on information and belief, that the Advance Inheritance, LLC did not obtain any documentation of the Plaintiff's income source or ability to pay prior to paying the

Verified Complaint

inheritance advance.

64. Because the transaction described herein met the HOEPA definition of high rate mortgage, the transaction was subject to additional disclosure requirements that must be provided three (3) days in advance of consummation of the transaction. (15 U.S.C. §1639(b)).

65. Defendants Advance Inheritance, LLC did not furnish the required HOEPA disclosures to Plaintiff three days prior to the consummation of the transaction or at any time.

66. Moreover, Defendant Advance Inheritance did not furnish a disclosure of the annual percentage yield that Plaintiff was paying for the First Mortgage Loan, which was at least 48.0%. They also did not provide any notice that Plaintiff had the right to cancel or rescind the loan within three days.

67. Additionally, the failure to disclose the Annual Percentage Rate or finance charge constitutes a separate TILA violation for failure to make material disclosures. (15 U.S.C. §1638; Reg. Z §§ 226.17-226.24)

68. As a direct and proximate result of Defendant's violations of HOEPA and TILA Plaintiff has suffered actual and statutory damages in an amount to be proven at time of trial.

69. As a result of the above-referenced violations of HOEPA and TILA, Plaintiff retained the right to rescind the transaction up to three (3) years after its consummation. Furthermore, as provided by California law, Plaintiff still has the right to rescission of the loan even though the loan was paid off by the second mortgage loan. *Pacific Shore Funding v. Lozo*, 42 Cal.Rptr.3d 283, 289, 138 Cal.App.4th 1342 (Cal.App. 2 Dist. 2006).

70. The conduct of Defendant Advance Inheritance, LLC was done with reckless disregard for the requirements of the law and for the safety, well-being, and legal rights of Plaintiff. Plaintiff therefore requests an award of punitive damages pursuant to California Civil Code §3394 as against all Defendants.

71. As a result of the foregoing, Plaintiff is also entitled to costs of suit and attorney's fees, plus other incidental and consequential damages in an amount to be proven at trial.

///

///

13
Verified Complaint

## SECOND CAUSE OF ACTION

## BREACH OF ESCROW DUTIES

### [As to ADVANCE INHERITANCE, LLC]

72. Plaintiff incorporates by reference each preceding paragraph as if it were fully set forth herein.

73. As a part of the First Mortgage Loan that Defendant Advance Inheritance, LLC made to Plaintiff, Advance Inheritance agreed to provide the funds per the instructions provided by Plaintiff. In so doing Advance Inheritance, LLC acted as the lender and the escrow agent of the transaction.

74. Plaintiff provided instructions directing that Defendant Advance Inheritance, LLC send those funds directly to his probate attorney.

75. Instead part of the funds were distributed directly to the County of San Diego Tax Collector and the remainder to Defendant Craig Lanser.

76. Defendant Advance Inheritance, LLC breached its contractual obligations and duties as an escrow officer to Plaintiff by failing to pay the full $35,000.00 to his attorney. As a result of this failure Plaintiff was damaged by the loss of approximately $4,500.00 in funds that were paid to Craig Lanser for helping put the loan together for which he was not legally permitted to collect a commission.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE TRUTH IN LENDING ACT

### (15 U.S.C. §§ 1601 *et sec.*)

### [As to DEFENDANTS VAL-CHRIS INVESTMENTS, INC. AND LAWRENCE MARION]

77. Plaintiff incorporates by reference each preceding paragraph as if it were fully set forth herein.

78. On or about April 7, 2010, Plaintiff signed various documents in order to obtain the Second Mortgage Loan from Defendants Val-Chris Investments, Inc. and Lawrence Marion.

79. At the time, Plaintiff was the equitable owner of the Subject Residence in that he was the sole heir with a vested ownership interest in his father's assets, which comprised only the Subject

Residence. The Subject Residence was also his primary residence.

80. The loan given by Defendants Val Chris and Marion was paid to Plaintiff or for his benefit in about April 2010 in the total amount of $85,000.00 (the "Second Mortgage Loan"). As a result of this transaction, Plaintiff received about $8,500.00 in cash and paid off the First Mortgage Loan.

81. The money received by Plaintiff was used primarily for household, personal or family purposes, including the refinance of a loan on his primary residence and the purchase of a personal motor vehicle.

82. Plaintiff is a consumer in that he is a natural person that received benefits from the loan and he was using the Subject Residence as his primary residence at the time of the loan.

83. The Second Mortgage Loan was a high rate mortgage within the meaning of HOEPA in that the total points and fees payable by Plaintiff at or before closing exceeded more than 8.0% of the total loan amount as that amount is defined by Regulation Z.

84. The points and fees of the Second Mortgage Loan include at least the following amounts: $3400.00 origination fee to Val Chris Investments, Inc., $3400.00 broker fee to G&R Investment Services, $750.00 processing fee to Val Chris Investments, Inc., $750.00 underwriting fee to Val Chris Investments, Inc., $350.00 funding fee to Val Chris Investments, Inc., $809.00 admin. fee to G&R Financial Services, $75.00 Loan Tie-In Fee to G&R Financial Services, $595.00 document preparation fee to Val Chris Investments, Inc. for a total of at least $9,534.00. (See Exhibits 6, 7, and 8).

85. The total loan amount is the face amount of the note minus the total points and fees such that assuming the points and fees were at least $9,534.00, then the points and fees are at least 12.26 percent of the total loan amount. Official Staff Commentary on Regulation Z, §226.32(a)(1)(ii)-1.

86. Because the transaction described herein met the HOEPA definition of high rate mortgage, the transaction was subject to additional disclosure requirements that must be provided three days in advance of consummation of the transaction. (15 U.S.C. §1639(b)).

87. Defendants Val-Chris Investments, Inc. and Marion did not furnish the required

HOEPA disclosures to Plaintiff three (3) days prior to the consummation of the transaction or at any time.

88. Moreover, the disclosure of the annual percentage yield and finance charge that Plaintiff was given on the day loan documents were signed, understated those amounts by more than the allowed tolerance errors. Defendants Val-Chris Investments, Inc. and Marion also did not provide any notice that Plaintiff had the right to cancel or rescind the loan within three days.

89. Additionally, the failure to disclose accurately the Annual Percentage Rate and finance charge constitutes a separate TILA violation for failure to make material disclosures. (15 U.S.C. §1638; Reg. Z §§ 226.17-226.24) The problems with these disclosures are discussed in more detail above in paragraphs 36 to 41.

90. The Defendants, and each of them, also violated TILA's general notice provisions when they failed to give any notice of the right to rescind the contract after signing the documents.

91. The terms of the loan also violated specific proscriptions provided in HOEPA as follows:

   a. The loan given to Plaintiff as described herein matured in less than five years and did not fully amortize the loan in equal periodic payments. Instead a balloon payment of $85,000.00 was required to be paid at the end of the loan term of approximately 3 years. This violated HOEPA's prohibition provided in 15 U.S.C. Section 1639(e). This loan was not a bridge loan as defined in the statute.

   b. The loan included a prepayment penalty that violated the proscriptions of HOEPA in that,

      (i) the loan caused Plaintiff to devote more than 50% of his monthly gross income to "monthly indebtedness payments", (15 U.S.C. Section 1639(c)(2)(A)(i).)

      (ii) the Defendants did not verify Plaintiff's income with payment records as required by 15 U.S.C. Section 1639(c)(2)(A)(ii), Reg. Z sec. 226.32(d)(7)(iii) and Official Staff Commentary sec. 226.32(d)(7)(iii)-2; and

      (iii) the prepayment penalty clause did not expressly exempt from application of the penalty pre-payment by a refinance done by the lender or one of its affiliates as

required by 15 U.S.C. sec. 1639(c)(2)(B) and Reg. Z sec. 226.32(d)(7)(ii).

92. Defendant Marion is liable as either the original lender or an assignee. Plaintiff is informed and believes and based thereon alleges that Defendants Val-Chris and Marion are liable as creditors under HOEPA in that they made the present HOEPA loan through a broker and/or have made more than one loan covered by HOEPA within a year of this transaction.

93. The facts that the Second Mortgage is covered by TILA and HOEPA and the existence of the violations enumerated above are either apparent on the face of the loan documents or would have been revealed by the exercise of reasonable diligence.

94. Plaintiff alleges based on information and belief that the Defendants and certain DOES conspired to acquire the appreciation and equity in the Subject Residence by refinancing the residence beyond Plaintiff's ability to pay. The object of said conspiracy was to generate broker's fees for Defendants Advance Inheritance, LLC, G & R Financial Services, Val-Chris Investments, Inc. and certain DOES and a security interest to the Defendant Marion with the right of non-judicial foreclosure.

95. Plaintiff alleges based on information and belief that Defendants Marion and Val-Chris have engaged in a pattern or practice of extending credit to consumers under mortgages referred to in section 1602 (aa) of TILA based on the consumers' collateral without regard to the consumers' repayment ability, including the consumers' current and expected income, current obligations, and employment. The loan made herein to Plaintiff is but one example.

96. As a result of the above-referenced violations of HOEPA and TILA, Plaintiff retained the right to rescind the transaction up to three years after its consummation.

97. On or about December 3, 2010, Plaintiff delivered to Defendant Val-Chris acting as the servicing agent of Defendant Marion and as the original lender a letter declaring that Plaintiff was rescinding the second mortgage loan.

98. More than 20 days have passed since Plaintiff provided the notice of rescission and the Defendants have failed to take any action necessary or appropriate to extinguish the security interest that the Lender Defendants received in the Subject Residence as a result of the loan they extended to Plaintiff, as required by applicable law.

99. Prior to Plaintiff exercising his right to rescission, the Defendants initiated a foreclosure action against the Plaintiff via serving and recording a Notice of Default and Election to Sell Under Deed of Trust on or about October 7, 2010. A true and correct copy of the notice of default is attached hereto as **Exhibit 13** and incorporated herein by this reference.

100. A notice of sale was served on or about January 31, 2011, despite Plaintiff's requests that the recording and service of the notice of sale be delayed to allow the parties to resolve this case without litigation. A foreclosure sale has been scheduled for February 22, 2011. A true and correct copy of the Notice of Sale served on January 31, 2011 is attached as **Exhibit 14**.

101. The lot of the Subject Residence has been subdivided such that Plaintiff expects to be able to tender the loan proceeds after an appropriate offset for damages and a refund of all finance charges and illegally taken brokers fees as a result of the sale of one of the lots. In fact, federal law states that the loan proceeds may be tendered with an asset of reasonably equivalent value.

102. As a direct and proximate result of Defendant's violations of HOEPA and TILA Plaintiff has suffered actual and statutory damages in an amount to be proven at time of trial.

103. Defendants' and each of their, conduct was done with reckless disregard for the requirements of the law and for the safety, well-being, and legal rights of Plaintiff. Plaintiff therefore requests an award of punitive damages pursuant to California Civil Code §3394 as against all Defendants.

104. As a result of the foregoing, Plaintiff is also entitled to costs of suit and attorney's fees, plus other incidental and consequential damages in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA PREDATORY LENDING ACT**

**(Cal. Fin. Code §§ 4970 *et sec.*)**

**[AS TO DEFENDANTS VAL-CHRIS, MARION, G & R FINANCIAL SERVICES, JAMES LEESTMA AND CERTAIN DOES]**

105. Plaintiff incorporates by reference each preceding paragraph as if it were fully set forth herein.

106. The Second Mortgage Loan is a covered loan pursuant to California's Predatory

Lending Law in that the loan amount does not exceed $417,000.00 and the total points and fees payable by Plaintiff at or before closing for the mortgage exceeded six percent (6%) of the total loan amount. (Cal. Fin. Code §4970(b)).

107. The above-described transaction is a consumer loan in that it is a consumer credit transaction that is secured by Plaintiff's principle dwelling located in this state and that dwelling was intended to be used or occupied as the principal dwelling of the Plaintiff at the time the loan was made.

108. The Defendants Val Chris, Marion, G & R Financial Services, Leestma and certain DOES originated the Second Mortgage Loan pursuant to the California Predatory Lending Law insofar as they arranged, negotiated or made the consumer loan. (Cal. Fin. Code §4970(b))

109. The Defendants Val Chris, Marion, G&R Financial Services, Leestma and certain DOES, and each of them, violated the California Predatory Lending Law. Said violations include, but are not limited to, the following violations of California Financial Code §4973:

    a. The transaction is for a term of less than five years and does not fully amortize the principle balance as of the maturity date of the loan, i.e. a balloon payment is due after only about three years. (Cal. Fin. Code §4973(b)(1));

    b. The Defendants, and each of them, did not have a reasonable belief that the Plaintiff would be able to make the scheduled payments in order to repay the obligation based upon the Plaintiff's income and expenses at the time the loan was funded. (Cal. Fin. Code §4973(f)(1));

    c. The transaction did not result in an identifiable benefit to the Plaintiff. In fact in only two months, the new loan added about $43,000.00 to the original debt of $42,000.00 that was owed on the property. (Cal. Fin. Code §4973(j)).

    d. The Defendants, and each of them, failed to give Plaintiff the mandatory "Consumer Caution and Home Ownership Counseling Notice" three days prior to the signing of the loan documents, and in fact did not give this notice at all. (Cal. Fin. Code §4973(k)(1));

    e. Defendants Val-Chris, G & R Financial Services, Leestma and certain DOES

violated fiduciary duties owed to Plaintiff pursuant to California Finance Code section 4979.5; and

  f. The Defendants, and each of them, financed points and fees in excess of 6.0% of the original loan balance, exclusive of points and fees, into the subject loan. (Cal. Fin. Code § 4979.6)

110. Plaintiff alleges on information and belief that Defendants', and each of their, violations enumerated above were willful and knowing.

111. As a direct and proximate result of Defendants' violations of California's Predatory Lending Law, Plaintiff has suffered actual and statutory damages in an amount to be proven at the time of trial. Statutory damages owed by the Defendants, and each of them, is equal to at least seven times $15,000, which totals at least $105,000.00.

112. Defendant's, and each of their, conduct was done with reckless disregard for the requirements of the law and for the safety, well-being, and legal rights of Plaintiff. Plaintiff therefore requests an award of punitive damages pursuant to Civil Code section 3294 as against all defendants. (Cal. Fin. Code §4978(b)(2)).

113. Defendants, and each of them, are jointly and severally liable for their violations of California's Predatory Lending Law pursuant to California Financial Code §4974(b) in that Defendants, and each of them, knew or showed reckless disregard for each of the other Defendants' violations of the California Predatory Lending Law.

114. As a result of the foregoing, Plaintiff is also entitled to costs of suit and attorney's fees, plus other incidental and consequential damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF CALIFORNIA'S REAL ESTATE LICENSING REGULATIONS

### (Cal. Bus. & Prof. Code §§ 10240 *et seq.*)

### [As to DOE DEFENDANTS 1 THROUGH 10]

115. Plaintiff incorporates by reference each preceding paragraph as if it were fully set forth herein.

116. Plaintiff alleges on information and belief that certain DOE DEFENDANTS 1