1  Daniel Lickel (SBN 224510)
   Rooney & Lickel
2  1102 Cesar Chavez Parkway
   San Diego, CA 92113
3  Phone: (858) 952-1033
   Fax:  (619) 546-0792
4

5  Attorneys for Plaintiff JONATHAN REED

6

7              UNITED STATES FEDERAL DISTRICT COURT
8            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| Jonathan Edward Reed,<br><br>            Plaintiff,<br><br>       vs.<br><br>Val-Chris Investments, Inc., a California Corporation; Rene Conte, an individual, doing business as G&R Financial Services; Greg Conte, an individual doing business as G&R Financial Services; Advance Inheritance, LLC, a Delaware limited liability company; Marion Lawrence, an individual; James Leestma, an individual; Craig Lanser, an individual; Ress Financial Corporation, a California corporation; and DOES 1-100, inclusive,<br><br>            Defendants. | FEDERAL CASE NO.<br>3:11-CV-0371 BEN WMC<br><br>CAL SUPERIOR COURT CASE NO.<br>37-2011-00085199-CU-OR-CTL<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR:<br>(1)   ORDER CONFIRMING THE TEMPORARY RESTRAINING ORDER ISSUED BY SUPERIOR COURT JUDGE WILLIAM S. DATO ON FEBRUARY 16, 2011;<br>(2)   ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUCTION SHOULD NOT ISSUE.<br><br><br>JUDGE:  ROGER T. BENITEZ<br>MAGISTRATE JUDGE: WILLIAM McCURINE |

EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUCTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES**                                3

**I.  SUMMARY**                                                        **3**

**II. FACTUAL BACKGROUND**                                             **4**

**III. THE TRO STANDARDS ARE MET HERE**                                **6**

**IV. THE PRELIMINARY INJUNCTION FACTORS FAVOR PLAINTIFFS**            **7**

**A.  Plaintiff has a Reasonable Probability of Success on the**

**Merits of His HOEPA and TILA Rescission Claim**                      **7**

*1.  The Second Mortgage Loan Had Points and Fees More than 8% of the Total Loan*   *8*

*2.  The Second Mortgage Loan is Secured by Plaintiff's Primary Residence*   *8*

*3.  The Second Mortgage Loan Was a Consumer Transaction*              *8*

*4.  Plaintiff was a Consumer in The Second Mortgage Loan*             *10*

*5.  Numerous TILA and HOEPA Violations are Indisputable and Give Plaintiff the*

*Right of Rescission*                                                 *11*

*6.  Plaintiffs Have the Right of Rescission and the Ability to Tender Reasonably*

*Equivalent Value*                                                    *12*

*7.  The Tender Amount Should be Reduced by Statutory Damages Under TILA*

*and HOEPA*                                                           *13*

*8.  Defendant Marion is Liable for Rescission Even if He is Found an Assignee*   *14*

**B.  Plaintiff has a Reasonable Probability of Success on the**

**Merits of their California Civil Code Rescission Claims**            **15**

**C.  The Potential Harm to Defendants is Small Compared to the**

**Harm Threatened to Plaintiffs**                                      **16**

**D. The Public Interest is Served by Issuing a Preliminary Injunction in this Case**   **17**

**V.  NO BOND IS REQUIRED IN THIS CASE**                               **17**

**VI.  CONCLUSION**                                                    **18**

**Table of authorities**                                              **19-20**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     SUMMARY

A foreclosure sale has been scheduled for March 1, 2011, which was originally scheduled for February 22, 2011.  A Temporary Restraining Order was issued by the Superior Court of California restraining Defendants until May 26, 2011 and scheduling a preliminary injunction hearing on that date.[1]  Plaintiff subsequently removed the case to Federal Court and has refused to stipulate that the temporary restraining order remain in effect until such time as a preliminary injunction motion could be heard.  Plaintiff seeks an order to show cause why a preliminary injunction should not issue and an order confirming that the temporary restraining order issued by the Superior Court remain in effect until such time as a hearing may be held on the OSC.

Plaintiff has notified Defendants Val Chris Investments, Inc., Lawrence Marion and Ress Financial Corporation by facsimile, ECF, voice mail and overnight delivery of these motion papers.  Plaintiff intends these motion papers to serve not only as the moving papers for the Ex Parte Application filed herewith, but also for any OSC issued by the Court.  These papers rely upon the original verified complaint on file and the declarations originally filed with the Ex Parte Application filed in State Court.  Those papers are being refiled with this Motion for the Convenience of the Court and have been sent by overnight delivery to the Defendants (except the verified complaint which they already have).  Originally, Plaintiff had requested that Defendants place the foreclosure process on hold in order to work out a resolution of this dispute; however, Defendants cut short any postponement on January 31, 2011 when they served a notice of sale. (VC ¶100; Ex 14)[2]  As a result, Plaintiff was forced to file suit and seek relief from the Superior Court to avoid irreparable harm.

Plaintiff has rescinded the loan that Defendants are seeking to foreclose, which is called the Second Mortgage Loan in the Verified Complaint.  The Court's enforcement of that rescission after a trial on the merits should eliminate Defendant's rights to foreclose and give Plaintiff unencumbered title.  This right of rescission is derived from both the Truth in Lending Act and the California rescission statute which allows rescission of an unlawful or unconscionable contract.  Plaintiff can

---

1   As shown in the attached declaration of Daniel Lickel, that order has been sent to all defendants as required therein and as a result is effective beyond the service and notice deadline set therein of February 25, 2011.
2   References to Exhibits are to Exhibits attached to the complaint which include Exhibits 1 through 15 and exhibits attached to this motion, which include 16 through 18.

demonstrate a likelihood of success on his rescission claims.

Plaintiff is entitled to a right of rescission of the current loan (called the Second Mortgage Loan in the Verified Complaint) because Plaintiff was a consumer under the terms of the Truth in Lending Act when the loan was made, the home was and is his primary residence, and his ownership interest in the dwelling was subject to the security interest by which Defendants are now attempting to foreclose the house.  Regulation Z, 12 C.F.R. § 226.2 (a) (11).  As a consumer under TILA, Plaintiff was entitled to receive all disclosures required by the Truth in Lending Act, especially notice of his right of rescission.  However, Defendants failed to make these disclosures.  That failure gave Plaintiff the right to exercise rescission within 3 years after the transaction.  Finally, Plaintiff has an ability to tender equivalent value because the property has substantial equity and has been subdivided such that one of the lots could be used to pay back equivalent value to the lenders.

## II.    FACTUAL BACKGROUND

This is a case of predatory lending by hard money lenders and brokers, in which the Defendants conspired to take for themselves excessive fees, interest, and substantial equity in Plaintiff's primary residence by framing the transaction as a "business" transaction rather than the consumer transaction it actually was.  The consumer protection laws provided in the Truth in Lending Act are to be liberally construed to avoid predatory lenders from getting around the protections provided in these laws by manipulating the form of the transaction.

Plaintiff's father passed away in 2003 and Plaintiff was his sole heir.  At the time he passed away, Plaintiff's father owned a home in San Diego located at 6432 Radio Drive, San Diego, Ca. 92114 ("Subject Residence").  In about 2008, Plaintiff moved into the home as his primary residence.  As a result of his father's passing Plaintiff had a vested ownership interest in the Subject Residence.  (Verified Complaint ("VC") ¶2)  For example, if Plaintiff had filed for Chapter 7 bankruptcy prior to the completion of the probate case, the bankruptcy trustee would have the right to sell the property to pay his creditors.  *See* Cal. Prob. Code §§ 263(b)(1), 267(b)(1).

In early 2010, when Plaintiff was facing the loss of the property in a tax lien sale,  the Defendants conspired to take away Plaintiff's substantial equity in the home in a two step process.  First, a company called Advance Inheritance, LLC made a mortgage loan directly to Plaintiff in the amount of $35,000.00 (the "First Mortgage Loan") while simultaneously arranging thought its "lending arm" to pay off this mortgage by obtaining a new loan for Plaintiff.  The terms of the First

EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

Mortgage Loan required Plaintiff to pay $42,000.00 if the loan was repaid before July 2010 and $50,000.00 if paid afterward.  Assuming the loan was paid off by July 2010, Advance Inheritance, LLC stood to earn an annual percentage yield of at least 48.0%.  (VC ¶3,4,61; Exhibit ("Ex") 5) The Defendants actually arranged for the loan to be paid off within two months which resulted in an actual annual percentage yield of  120.0 %.[3]

It was also understood that this money was to be paid directly to Plaintiff or to third parties for his personal benefit.  In fact, the purpose of the First Mortgage Loan was to pay off the property taxes so that Plaintiff could continue living in his home, an indisputable consumer purpose.  (VC ¶1,7,19, 20. 23)  No disclosures were made regarding the annual percentage yield that Defendants Advance Inheritance, LLC and Craig Lanser stood to earn in the transaction.  (VC ¶65, 66.)

The second step in Defendants' scheme was the second loan used to to pay off the first, which was brokered in part by G & R Financial Services[4], the self described "lending arm" of Advance Inheritance, LLC, and James Leestma himself, the principal owner of Advance Inheritance, LLC. (Ex 2; VC ¶24, 33, 148)  The new lender, Val Chris Investments, Inc. also assumed a fiduciary relationship with Plaintiff by agreeing to act as Plaintiff's agent and representative in finding an investor, which it did in Defendant Lawrence Marion.  (VC ¶46, 52; Exs 9, 12)  The Second Mortgage Loan was framed as a loan with a "business purpose", in the form of a "refi" for the "Estate of Ronald Reed" when in reality it was a refinance of the First Mortgage Loan that Plaintiff had received to pay off the property taxes on his home.  (VC ¶¶43,44; Reed Decl. ¶2)

Defendants took these steps all along knowing or simply not caring that Plaintiff did not have the ability to make the loan payments.  For example, Greg Conte of G & R Investment Services told Plaintiff in a letter requesting him to fill out a loan application, "Administrator loans do not require much paperwork as they are mostly equity based." (VC ¶6, 24) After talking with Plaintiff about his financial situation, Defendant James Leestma told Plaintiff not to worry about filling out the income section and to leave that to him.  (VC ¶6,148)  Plaintiff has been financially unable to make any of the payments and Defendants, having already received excessive fees now stand to gain all the equity in Plaintiff's home.  Plaintiff went from owing $28,000.00 in property

---

3   Calculated by (1) dividing $7,000.00 by $35,000.00 which is 20%; (2) dividing 20% by 2 to get a monthly rate of
    return for the two months which is 10%; and (3) multiplying 10% times 12 months to get an annual percentage yield.
4   Plaintiff believes the G & R stands for Greg and Rene Conte who are doing business under this name and under a
    finance lender's license issued by the California Department of Corporations.

EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

taxes on his home to now owing $85,000.00 and facing the loss of the home all in exchange for a mere $8,200.00 in cash. (VC ¶ 7; Ex 8.)

### III.   THE TRO STANDARDS ARE MET HERE

Civil Local Rule 83.3(h)(2) states, "A motion for an order must not be made ex parte unless it appears by affidavit or declaration (1) that within a reasonable time before the motion the party informed the opposing party or the opposing party's attorney when and where the motion would be made; or (2) that the party in good faith attempted to inform the opposing party and the opposing party's attorney but was unable to do so, specifying the efforts made to inform them; or (3) that for reasons specified the party should not be required to inform the opposing party or the opposing party's attorney." Plaintiff has accomplished these.  (Decl. of D. Lickel ¶

As expressed by Judge Hayes of the Southern District of California, in *La Jolla Friends of the Seals v. National Oceanic and Atmospheric Administration National Marine Fisheries Service,* Case No. 08cv1847 WQH, 2008.SCA.0001805 (S.D.Cal. 12/18/2008):

"The underlying purpose of a temporary restraining order is to preserve the status quo and prevent irreparable harm before a preliminary injunction hearing may be held. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974); *see also Reno Air Racing Ass'n v. McCord,* 452 F.3d 1126, 1130-31 (9th Cir. 2006). The standard for issuing a temporary restraining order requires that the party seeking relief show either "(1) a combination of likelihood of success on the merits and the possibility of irreparable harm, or (2) that serious questions going to the merits are raised and the balance of hardships tips sharply in favor of the moving party." *Immigrant Assistance Project of the L.A. County of Fed'n of Labor v. INS, 306 F.3d 842, 873 (9th Cir. 2002).* "[T]hese two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Dep't Parks & Rec. of Calif. v. Bazaar Del Mundo, Inc., 448 F.3d 1118, 1123 (9th Cir. 2006) (citations omitted).*"

At Temporary Restraining Order is justified in this case because there is both a possibility of irreparable harm and a high likelihood of success on the merits.  Plaintiff is at risk of being thrown out of his home by a non-judicial foreclosure sale that is based on a deed of trust rendered invalid by Plaintiff's exercise of his right to rescission.  Plaintiff's home contains all that he owns.  It is his sanctuary.  The shame and emotional distress of homelessness is a grave consequence.  (Reed Decl.

¶9)  The home has been in Plaintiff's family all his life and was acquired by his father's hard work. (Reed Decl. ¶9)  The emotional toll that eviction from his home would cause in addition to the financial consequences are incalculable.  Furthermore, the home is unique and of high sentimental value, such that the true loss associated with eviction from the home would be extremely difficult to ascertain.  The financial costs of moving out of the home would also be significant and might result in the loss of a substantial portion of his personal property which includes family heirlooms.  (Reed Decl. ¶9)

Conversely, any inconvenience to the Defendants pales by comparison.  The Defendant Marion's purported security interest provides Defendant with protection in the unlikely event that he might prevail in this matter.  Furthermore, Defendant Marion's loan is significantly over secured by the home as demonstrated by the analysis of broker, Mark Betteker, which puts the value of the two lots subject to the security interest at about $206,000.00.  (Betteker Decl. ¶11; Exs 16-17.)

The likelihood of success on the merits is demonstrated below.

## IV.    THE PRELIMINARY INJUCTION FACTORS FAVOR PLAINTIFFS

A party seeking a preliminary injunction must establish:  (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm to plaintiff in the absence of preliminary relief; (3) the balance of equities tips in Plaintiff's favor; and (4) an injunction is in the public interest.  *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365, 374 (2008); *Amoco Prod. Co. v. Village of Gambell, Alaska,* 480 U.S. 531, 542, 107 S.Ct. 1396, 1402 (1987).    All of these factors are satisfied in this case.

### A.  Plaintiff has a Likelihood of Success on the Merits of His HOEPA and TILA Rescission Claim

The subject loan is covered by HOEPA and TILA, federal consumer protection statutes. TILA defines a loan covered by the Home Ownership Equity Protection Act in 15 U.S.C. 1602(aa), which states:

"A mortgage referred to in this subsection means a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan, if— . . . (B) the total points and fees payable by the consumer at or before closing will exceed the greater of— (i) 8 percent of the

total loan amount; or (ii) $400."

As a consumer protection statute, TILA "is to be liberally construed in favor of borrowers." *Pacific Shore Funding v. Lozo,* 138 Cal.App.4th 1342, 1351 (Cal.App. Dist.2 04/27/2006) (*Citing Wiggins v. Avco Financial Services*, 62 F.Supp.2d 90, 94 (D.D.C. 1999); Riggs v. Government Emp. Financial Corp. (9th Cir. 1980) 623 F.2d 68, 71.)

 All of the elements of the HOEPA coverage definition are met in this case.

### 1. The Second Mortgage Loan Had Points and Fees More than 8% of the Total Loan

There should be no dispute that the points and fees of the loan exceed 8%. of the total loan amount.  The points and fees of the second mortgage loan can conservatively be calculated to include at least the following amounts:  $3400.00 origination fee to Val Chris Investments, Inc., $3400.00 broker fee to G&R Investment Services, $750.00 processing fee to Val Chris Investments, Inc., $750.00 underwriting fee to Val Chris Investments, Inc., $350.00 funding fee to Val Chris Investments, Inc., $809.00 admin fee to G&R Financial Services, $75.00 Loan Tie-In Fee to G&R Financial Services, $595.00 document preparation fee to Val Chris Investments, Inc.  for a total of at least $9534.00. (VC ¶ 84; Exs 6-8)  The total loan amount is the face amount of the note minus the total points and fees.  Official Staff Commentary on Regulation Z, §226.32(a)(1)(ii)-1.  Thus, with the points and fees at least $9,534.00, then the points and fees are at least 12.63 percent of the total loan amount, which is greater than 8%.[5]

### 2. The Second Mortgage Loan is Secured by Plaintiff's Primary Residence

There should also be no dispute that the residence that secured the Second Mortgage Loan was Plaintiff's primary residence.  He has been living there since about 2008 and intends to continue living there. (VC ¶2)

### 3. The Second Mortgage Loan Was a Consumer Transaction

There should be no dispute that the principal purpose of the transaction is a consumer finance transaction.   A loan has a consumer purpose if the loan was "primarily for personal, family or household purposes."  15 U.S.C. §1602(h).[6]  Generally, courts must examine the transaction as a whole and the purpose for which the credit was extended in order to determine whether this

---

5   $85,000.00 minus $9534.00 is $75,466.00.  $9534.00 divided by $75,466.00 equals 12.63 percent.

6   This section states, "(h) The adjective "consumer," used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family or household purposes."

transaction was primarily consumer or commercial in nature.  *Tower v. Home Construction Co.,* 625 F.2d 1161, fn.4 (5th Cir. 1980) (home improvement transaction primarily for consumer purpose although home had been leased for nominal rent); *Gallegos v. Stokes,* 593 F.2d 372 (10th Cir. 1979) (credit purchase of truck primarily for personal use where Plaintiff also intended to use it for business but did not have an on-going business nor the prospect of establishing one); *Semar v. Platte Valle Fed. Sav. & Loan Ass'n,* 791 F.2d 699, 704 fn.11 (9th Cir. (mortgage loan "primarily" for personal use if only 10% of proceeds used for business purposes and primary purpose of loan was to pay off a second trust deed loan on the consumer's house).

In this case, the loan was to refinance the First Mortgage Loan that was secured by Plaintiff's home. (VC ¶¶2-3,5,44) The amount to pay off the First Mortgage Loan was $42,000.00.  This loan was originally taken out to pay property taxes on the home.  In addition, debtor received proceeds of about $8500.00 from the loan which he used to buy an automobile for transportation. (VC ¶81; Reed Decl. ¶12) These are personal transactions.

Defendants may argue that the actual purpose of the transaction was "business" because the Defendants made Plaintiff sign a document that said the purpose was "business" even though the purpose was not "business."  Plaintiff never had a business and everyone in the transaction knew he was living at the home and that the purpose of the transaction was to pay off the property taxes on the home so that he could continue living there. (VC ¶¶ 3, 19, 20, 23, 31, 36; Ex 7, page 4 of 6) Exhibit 7 demonstrates that even Defendants Val Chris Investments, Inc. and Marion Lawrence knew that the loan was to pay off property taxes.  (Ex 7, page 4 of 6; VC ¶ 36)

A conclusory business purpose document is not controlling.  *See, e.g., Semar, supra,* 791 F.2d at 704 fn.11 (consumer purpose found despite borrower's statement that "[t]he additional money from my loan is to be used for back up business capital."); *Waterloo Leasing Co. v. McNat,* 620 S.W.2d 194 (Tex. App.. 1981) (statement that "this vehicle to be used for business" did not mean it was primarily so, and facts showed it was primarily for consumer purposes under the Truth in Lending Act); *Morris v. Resolution Trust Corp.,* 622 A.2d 708 (Me. 1993) (court found a consumer loan even though the loan application was labeled commercial because bank knew borrower intended to use proceeds for home); *Peters v. Ojeda,* 902 So. 2D 219 (Fla. Dist. ct. App. 2005) (creditor not entitled to summary judgment based on "Business Purpose Affidavit" where borrowers claimed that loan was for personal purposes and that they signed affidavit because it was

in a stack of documents they were instructed to sign).   Courts look past the paperwork to the actual purpose of the transaction.

### 4.  Plaintiff was a Consumer in The Second Mortgage Loan

Finally there should be no dispute that Plaintiff was a consumer in these transactions because the loan was to be secured by his ownership interest in the home.  A consumer is defined in TILA and its regulations as follows:

15 U.S.C. Section 1602(h), states,

"The adjective "consumer," used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes."

Regulation Z section 226.2 (a) (11) states,

"'Consumer' means a cardholder or a natural person to whom consumer credit is offered or extended.  However, for purposes of rescission under sections 226.15 and 226.23, the term also includes a natural person in whose principal dwelling a security interest is or will be retained or acquired, if that person's ownership interest in the dwelling is or will be subject to the security interest."

The commentary clarifies the meaning of "ownership interest" as follows:  *Rescission Rules.*  For purposes of rescission under sections 226.15 and 226.23, a consumer includes any natural person whose ownership interest in his or her principal dwelling is subject to the risk of loss. Thus, if a security interest is taken in A's ownership interest in a house and that house is A's principal dwelling, A is a consumer for purposes of rescission, even if A is not liable, either primarily or secondarily, on the underlying consumer credit transactions.  An ownership interest does not include, for example, leaseholds or inchoate rights, such as dower."  Regulation Z Commentary, §226.2(a)(11).

Plaintiff was and now is the legal owner of the home as the sole heir of his father's estate with a vested ownership interest in the home as a result of his father's death.  Cal. Probate Code §§ 263(b)(1), 267(b)(1); Ex 1)  This is confirmed by the fact that Advance Inheritance, LLC was willing to give Plaintiff the First Mortgage Loan of $35,000.00 in exchange for a partial assignment of his inheritance and a security interest in the home.  Furthermore, the loan was offered to Plaintiff,

a natural person, because the Second Mortgage Loan was made to Plaintiff so that he could pay off the First Mortgage Loan that was paid directly to him for the purpose of paying off the property taxes.  Furthermore, funds were paid directly to Plaintiff from the loan proceeds of the Second Mortgage Loan even before the distribution order issued in the probate case.  Finally, Plaintiff was understood to be the one who would own and live in the Subject Residence from the beginning.[7]

### 5.      Numerous TILA and HOEPA Violations are Indisputable and
### *Give Plaintiff the Right of Rescission*

As a consumer for purposes of rescission, a Plaintiff was entitled to receive all notices required by the Truth in Lending Act. *Soto v. PNC Bank (In re Soto)*, 221 B.R. 343, 360-361 (Bankr. E.D. Pa. 1998) (rejecting creditor's argument that since the homeowner was not obligated on the loan, she was only entitled to the notice of right to cancel and not other disclosures).  Thus, Defendants violated the Home Ownership Equity Protection Act ("HOEPA") and the Truth In Lending Act ("TILA") in at least four ways:

a.      Defendants failed to provide any disclosures regarding Plaintiff's right to rescind the loan;  (VC ¶90; 15 U.S.C. Section 1635(a))

b.      Defendants failed to provide the disclosures required by HOEPA three (3) days prior to the consummation of the transaction or at any time.  (VC ¶87; 15 U.S.C. §1639(b))[8]

c.      The loan given to Plaintiffs as described herein matures in less than five years and does not fully amortize the loan in equal periodic payments.  Instead a balloon payment of

---

7   In addition, if Defendants attempt to argue that the true borrower here was the Estate of Ronald Reed, as articulated in Regulation Z commentary section 226.3(a)-8, the estate should be considered a land trust since the Plaintiff was sole heir of the estate as well as the administrator and  the loan was made for his benefit.  Such a transaction is subject to the Truth in Lending regulation because "in substance (if not in form) consumer credit is being extended." Id. (Parentheses in original.)

8   The required disclosures are:
"(a) Disclosures (1) Specific disclosures:  In addition to other disclosures required under this subchapter, for each mortgage referred to in section 1602(aa) of this title, the creditor shall provide the following disclosures in conspicuous type size:
        (A) ``You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application.'';  or
        (B) ``If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.''.
"(2) Annual percentage rate:  In addition to the disclosures required under paragraph (1), the creditor shall disclose--
        (A) in the case of a credit transaction with a fixed rate of interest, the annual percentage rate and the amount of the regular monthly payment; or
        (B) in the case of any other credit transaction, the annual percentage rate of the loan, the amount of the regular monthly payment, a statement that the interest rate and monthly payment may increase, and the amount of the maximum monthly payment, based on the maximum interest rate allowed pursuant to section  3806 of title 12."

EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUCTION

$85,000.00 was required to be paid at the end of the loan term of approximately 3 years. (VC ¶91(a); Ex 10 ¶3) This violated HOEPA's prohibition provided in 15 U.S.C. Section 1639(e).

        d.      The loan included an unlawful prepayment penalty because at a minimum, (i) the Defendants did not verify Plaintiff's income with payment records as required by 15 U.S.C. Section 1639(c)(2)(A)(ii), Reg. Z sec. 226.32(d)(7)(iii) and Official Staff Commentary sec. 226.32(d)(7)(iii)-2, and (ii) the prepayment penalty clause did not expressly exempt from application of the penalty prepayment, a refinance done by the lender or one of its affiliates as required by 15 U.S.C. sec. 1639(c)(2)(B) and Reg. Z sec. 226.32(d)(7)(ii).  (VC ¶91(b); Ex 10)

### 6.  Plaintiffs Have the Right of Rescission and the Ability to Tender

        Under the TILA, these indisputable violations grant Plaintiff the right of rescission, which Plaintiff exercised via a letter dated December 3, 2010 and the Verified Complaint filed with this action.  (Lickel Decl. ¶2; Ex 18.)  Pursuant to 15 U.S.C. Section 1635, rescission under TILA yields the following result:

        "When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor."

        Twenty days have passed since December 3, 2010 and Defendants have failed to "take any action necessary or appropriate to reflect the termination of any security interest created under the transaction."  (Id.; Lickel Decl. ¶3)  Given that after receiving Plaintiff's letter, Defendants recorded a Notice of Sale against the property, Plaintiff reasonably concludes that Defendants have no intention of fulfilling this requirement without a judicial order. (Ex 14; VC ¶100) Furthermore, given Defendants resistance, Plaintiff is not obligated to "tender" loan proceeds or something equal

to "its reasonable value" until Defendants fulfill their obligations.

Plaintiffs may cite to the Court the case of *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1169-1170 (9th Cir. 2003); however, that case is easily distinguishable from the present case. According to *Yamamoto*, a Court has discretion in equity to require a showing by Plaintiffs that they can tender the loan proceeds or provide something equal to "its reasonable value" upon rescission of the loan that assures that the borrower meets his obligations once the creditor has performed its obligations. Id. at 1173.  However, *Yamamoto* says that this discretion may only be exercised when "the borrower cannot comply with the borrower's rescission obligations no matter what." *Id.*  This is not the case here by any means.

Since receiving the loan in this case, Plaintiff has subdivided the lot where his home stands such that one of the lots could be used to tender the loan proceeds owed either be tending the lot itself or by tending the proceeds of a sale of the lot.  (Betteker Decl. ¶6)  One lot has Plaintiff's house and is estimated to be worth at least $140,000.00.  The other lot has a garage on it and has been appraised at $66,000.00. (Betteker Decl. ¶11; Exs 16, 17)  Rescission alone, not counting the damages that may be recouped as discussed below, reduces the loan amount to at least $62,856.99, after deducting all transaction costs.  (Ex 8; VC ¶36)  This includes deduction for the $10,000.00 paid to Craig Lanser as an illegal "broker fee".  (VC ¶¶ 20, 41, 183; Exs 6, 8; Reed Decl. ¶¶ 5-6)

### 7.  The Tender Amount Should be Reduced by Statutory Damages Under TILA and HOEPA

The tender amount should also be reduced by recouping statutory penalties.[9]  Where rescission is sought and the creditor refuses to provide it in violation of section 1635, damages are available under section 1640(a), which specifically states that the damages recited in that subdivision may be charged to "any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title [which deals with rescission], or part D or E of this subchapter with respect to any person . . ."

Three categories of damages are available under section 1640(a):  (1)  statutory damages  for the TILA disclosure violations, including the failure to provide notice of rescission;[10]  (2) statutory damages for the failure of the creditor to rescind the loan after the demand was made; and (3)

---

9   In fact, the one year statute of limitations for such damages has not yet run since the loan was made in about April, 2010.  (VC ¶¶35, 52)

10  15 U.S.C. 1635(g) provides, "In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind."  Thus, statutory damages are available in addition to rescission.

statutory damages for violation of HOEPA.  Federal law recognizes that statutory damages may be off-set against the tender amount prior to requiring tender of the loan proceeds. *In re Steinbrecher,* 110 B.R. 155, 166-167 (Bankr. E.D. Pa. 1990);  *Clay v. Johnson,* 77 F. Supp. 2d 879 (N.D. Ill. 1999) (see conclusion), rev'd on other grounds, 264 F.3d 744 (7th Cir. 2001). The notice violation and the creditor's failure to rescind justify awarding Plaintiff $8,000.00 in statutory damages.

15 U.S.C. 1640(a)(4) deals with HOEPA (section 1639) damages directly:

> "in the case of a failure to comply with any requirement under section 1639 of this title, an amount equal to the sum of all finance charges and fees paid by the consumer, unless the creditor demonstrates that the failure to comply is not material."

The amount of the enhanced damages is determined according to the language in section 1640(a)(4), "all finance charges and fees paid by the consumer."   All finance charges and fees paid by the consumer include the fees and charges that were financed into the loan.  *Faircloth v. Fin. Asset Sec. Corp. Mego Mortgage Homeowner Loan Trust*, 87 Fed. Appx. 314, 319 (4*th* Cir. 2004) (the obligation to pay closing costs is discharged at closing; "the fees were 'paid,' albeit with loan proceeds, at the dated of closing"). In this case, as discussed above, Defendants cannot dispute that the points and fees of the Second Mortgage Loan are at least  $9,534.00.  With four HOEPA violations, the loan amount could be reduced by at least another $38,036.00.

### 8. Defendant Marion is Liable for Rescission Even if He is Found an Assignee

Defendants may argue that Defendant Marion's liability is limited because he is allegedly an assignee of the Second Mortgage Loan.  Such an argument fails.  Assignees are subject to a borrower's right of rescission to the same extent as the original creditor.  15 U.S.C. §1641(c).

Furthermore, an assignee is liable for violations of TILA that are apparent on the face of the documents. 15 U.S.C. §1641(a).   These errors include the miscalculation of the APR based on the $350.00 funding fee that was not included in the finance charge or APR calculation.  (VC ¶37; Ex 15 (including $350.00 funding fee in "amount financed" rather than "finance charge"))  Another error is the failure to include the rescission notice.

Finally, where a loan is covered by HOEPA, an assignee is responsible for all statutory damages arising from violations that would be uncovered by the exercise of reasonable diligence and the assignee has the burden of proving that the defects could not have been so discovered.  15 U.S.C. §1641(d)(1).  In this case, it was apparent from the documents that Plaintiff lived at the

property in question, that Plaintiff was to inherit the house from his father's probate estate, that the loan was being used to pay off property taxes on the house (Ex. 7, page 4), a personal consumer purpose, that the points and fees financed into the loan were more than 8% of the total loan amount.

### B.  Plaintiff has a Likelihood of Success on the
### Merits of their California Civil Code Rescission Claims

Plaintiff also asserts in the Verified Complaint that Defendants Val Chris and Marion violated the California Predatory Lending Act.  California Civil Code section 1689 provides in pertinent part that rescission of a transaction is available where:  "(b) A party to a contract may rescind the contract (1) If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party. [or] (5) If the contract is unlawful for causes which do not appear in its terms or conditions, and the parties are not equally at fault."  An unlawful contract is defined in Civil Code section 1667:  "That is not lawful which is:  1. Contrary to an express provision of law;  2. Contrary to the policy of express law, though not expressly prohibited; or, 3. Otherwise contrary to good morals."

Based on the same facts stated above regarding the applicability of TILA and HOEPA, the California Predatory Lending Act also applies to this loan.  The criteria are that the loan was a consumer credit transaction secured by a home used or intended to be used as a primary residence where the total points and fees are more than 6% of the total loan amount.  (Cal. Fin. Code section 4970(b)&(d).)  As discussed above, these criteria are met here.

Given this, Defendants violated the California Predatory Lending Act in at least the following ways:

a.      The transaction is for a term of less than five years and does not fully amortize the principle balance as of the maturity dated of the loan, i.e. a balloon payment is due after only about three years.  (Cal. Fin. Code §4973(b)(1));

b.      The Defendants, and each of them, did not have a reasonable belief that the Plaintiff would be able to make the scheduled payments in order to repay the obligation based upon the Plaintiff's income and expenses at the time the loan was funded.  (Cal. Fin. Code §4973(f)(1));

c.      Periodic payments of insurance and property taxes were consolidated and paid in advance from the loan proceeds.  (Cal. Fin. Code § 4973(d));

d.      The transaction did not result in an identifiable benefit to the Plaintiff.  In fact in only two months, the new loan added about $50,000 to the original debt of $35,000.00 that was owed on the property.  (Cal. Fin. Code §4973(j)).

e.      The Defendants, and each of them, failed to give Plaintiff the mandatory "Consumer Caution and Home Ownership Counseling Notice" three days prior to the signing of the loan documents, and in fact did not give this notice at all.  (Cal. Fin. Code §4973(k)(1));

f.      Defendants Val-Chris, G & R Financial Services and certain DOES violated fiduciary duties owed to Plaintiffs pursuant to California Finance Code section 4979.5; and

g.      The Defendants, and each of them, financed points and fees in excess of 6.0% of the original loan balance, exclusive of points and fees, into the subject loan.  (Cal. Fin. Code § 4979.6)

These violations render the subject loan transaction unlawful in that they are violations of express provisions of law, namely the California Predatory Lending Act.  Pursuant to Civil Code section 1689 subdivisions (a) and (d), these violations also entitle Plaintiff to rescission of the loan transaction.

Of great importance is Defendants' failure to provide Plaintiff with the notice required by Finance Code section 4973(k)(1).  The documents given to him on April 7 did not include the mandatory "Consumer Caution and Home Ownership Counseling Notice".  (Reed Decl. ¶7) Furthermore, this mandatory notice was also not given to Plaintiffs three (3) days prior to the signing of the loan documents.  (Reed  Decl. ¶7) This fatal flaw in the transaction is not apparent anywhere within its terms and conditions.

## C.  The Potential Harm to Defendants is Small Compared to the Harm Threatened to Plaintiffs

Harm that might be suffered by Defendants in this case is small relative to the harm threatened against Plaintiff.  The potential loss of real property through foreclosure may constitute a threat of irreparable harm. *Sundance Land Corp. v. Community First Fed'l Sav. & Loan Ass'n,* 840 F.2d 653, 661.  In the unlikely event the court ultimately decides this case in favor of the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants, they will receive possession of the property which currently provides 200% security for the loan. (Compare Ex 15 (outstanding debt claimed is about $93,000.00) with Exs 16, 17 (valuation at $206,000.00).) Plaintiff has maintaining his  home and is actively taking steps to improve its condition. (Reed Decl. ¶8)  No waste or damage will occur while this action is pending.  For the Defendants this matter is a transaction cost.  For Plaintiff, this is his life.

### D.      The Public Interest is Served by Issuing a Preliminary Injunction in this Case

Plaintiff submits the public interest favors the granting of the requested relief.  The public has an interest in the orderly administration of justice with respect to this transaction which will be defeated if the relief sought is not granted.  Public policy favors the proper adjudication of claims of predatory lending against homeowners, especially where the loans are subject to HOEPA, violations of which Congress imposed enhanced damages.  15 U.S.C. §1640(a)(4); *Newton v. United Cos. Fin. Corp.* 24 F. Supp. 2d 444 (E.D. Pa. 1998) (violations of HOEPA give rise to rescission and awards of sections 1640(a)(2) and 1640(a)(4) statutory damages).

The immediate consequence of allowing the foreclosure of Plaintiff's home is that he and his cohabitants (Reed Decl. ¶11), could become homeless.  The public policy also dictates that the Plaintiff should not be rendered homeless without a full adjudication of his case on the merits.

### V.      NO BOND IS REQUIRED IN THIS CASE

When a plaintiff applying for a preliminary injunction is indigent and cannot be expected to obtain a bond, such a bond requirement can be waived by the Federal Court. Requiring a bond would in effect result in denying Plaintiff an opportunity to have justice done with respect to his claims because he would suffer the irreparable harm of the foreclosure before ever getting to trial. *Orantes-Hernandez v. Smith,* 541 F. Supp. 351, 385, fn. 42 (C.D. Cal. 1982);  *Barahona-Gomez v. Reno,* 167 F.3d 1228, 1237 (9th Cir. 1999) (requiring only a nominal bond because the "vast majority of [Plaintiffs] were very poor").   Plaintiff qualifies as indigent because his personal income is currently zero and that of his household of four unrelated individuals falls below the federal poverty level which is used for determining eligibility for various public benefits, which for a family of four is $22,350 annually.  (Federal Register Vol. 76, No.13,  January 20, 2011, pp. 3637-3638; Ex 19 attached; Reed Decl. ¶11.)   Plaintiff has no other asset other than the Subject Residence.

Furthermore, a strong likelihood of success on the merits as exists in this case and can be

relied upon by the Court to negate the need for security. *Orantes-Hernandez,* 541 F. Supp. at 385, fn.42.  Finally, where the  balance of hardships each party may suffer as a result of a preliminary injunction "weighs overwhelmingly in favor of the party seeking the injunction," a district court may waive the bond requirement."  *Elliot v. Kiesewetter,* 98 F.3d 47, 60 (3rd Cir. 1996).  Such is the case here.

### VI.     CONCLUSION

Defendants have engaged in predatory lending behavior that is reprehensible and should not be allowed to profit from that by foreclosing on the Subject Residence and retaining broker fees wrongfully obtained and excessive equity.  The facts and law outlined herein demonstrate that Plaintiff has a strong likelihood of success on the merits.  Plaintiff requests that the Court confirm the Temporary Restraining Order issued by the San Diego Superior Court and issue an Order to Show Cause Why a Preliminary Injunction should not issue so that Plaintiff's life might not be irreparably destroyed while Plaintiff awaits the rendering of justice in this case after a decision on the merits.

Respectfully submitted,

DATED: ____2/25/2011_____          __/S/ Daniel Lickel _____
                                      DANIEL LICKEL
                                      Attorney for Plaintiff Jonathan Reed

EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Statutes:**

1.      15 U.S.C. §1602(aa)                                          page 7

2.      15 U.S.C. §1639(b)                                           page 11

*3.*     15 U.S.C. §1639(e)                                           page 12

4.      15 U.S.C. §1640(a)(4)                                        page 17

5.      15 U.S.C. Section 1635(a)                                    page 11

**Judicial Opinions:**

6.      *Amoco Prod. Co. v. Village of Gambell, Alaska,* 480 U.S. 531, 542, 107 S.Ct. 1396, 1402

(1987)                                                               page 7

7.      *Barahona-Gomez v. Reno,* 167 F.3d 1228, 1237 (9th Cir. 1999)      page 17

*8.*     Cal. Fin. Code §4973                                         pages 15-16

9.      Cal. Fin. Code section 4970(b)&(d)  page 15

10.     Cal. Prob. Code §§ 263(b)(1), 267(b)(1)                      page 4

11.     Civil Code section 1667                                      page 14

*12.*    Clay v. Johnson, 77 F. Supp. 2d 879 (N.D. Ill. 1999) (see conclusion), rev'd on other

grounds, 264 F.3d 744 (7th Cir. 2001).                               page 14

13.     *Dep't Parks & Rec. of Calif. v. Bazaar Del Mundo, Inc., 448 F.3d 1118, 1123 (9th Cir. 2006)*

page 6

14.     *Elliot v. Kiesewetter,* 98 F.3d 47, 60 (3rd Cir. 1996).          page 18

*15.*    Faircloth v. Fin. Asset Sec. Corp. Mego Mortgage Homeowner Loan Trust, 87 Fed. Appx.

314, 319 (4th Cir. 2004)                                             page 14

16.     *Federal Register Vol. 76, No.13,  January 20, 2011, pp. 3637-3638; Ex 19 attached*

17.     *Gallegos v. Stokes,* 593 F.2d 372 (10th Cir. 1979)              page 9

18.     *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439

(1974)                                                               page 6

19.     *Immigrant Assistance Project of the L.A. County of Fed'n of Labor v. INS, 306 F.3d 842, 873*

*(9th Cir. 2002)*                                                     page 6

*20.*    In re Steinbrecher, 110 B.R. 155, 166-167 (Bankr. E.D. Pa. 1990)    page 14

EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUCTION

21.     *La Jolla Friends of the Seals v. National Oceanic and Atmospheric Administration National Marine Fisheries Service,* Case No. 08cv1847 WQH, 2008.SCA.0001805 (S.D.Cal. 12/18/2008

page 6

22.     *Morris v. Resolution Trust Corp.,* 622 A.2d 708 (Me. 1993)                page 9

23.     *Newton v. United Cos. Fin. Corp.* 24 F. Supp. 2d 444 (E.D. Pa. 1998)    pages 17

24.     Official Staff Commentary on Regulation Z, §226.32(a)(1)(ii)-1.         page 9

25.     *Orantes-Hernandez v. Smith,* 541 F. Supp. 351, 385, fn. 42 (C.D. Cal. 1982)  page 17

26.     *Pacific Shore Funding v. Lozo,* 138 Cal.App.4th 1342, 1351 (Cal.App. Dist.2 04/27/2006)

page 8

27.     *Peters v. Ojeda,* 902 So. 2D 219 (Fla. Dist. ct. App. 2005)            page 9

28.     Regulation Z, 12 C.F.R. § 226.2 (a) (11)                               page 4

29.     *Reno Air Racing Ass'n v. McCord,* 452 F.3d 1126, 1130-31 (9th Cir. 2006)  page 6

30.     *Riggs v. Government Emp. Financial Corp.* 623 F.2d 68, 71 (9th Cir. 1980) page 8

31.     *Semar v. Platte Valle Fed. Sav. & Loan Ass'n,* 791 F.2d 699, 704 fn.11 (2002) page 9

32.     *Soto v. PNC Bank (In re Soto)*, 221 B.R. 343, 360-361 (Bankr. E.D. Pa. 1998)  page 11

33.     *Sundance Land Corp. v. Community First Fed'l Sav. & Loan Ass'n,* 840 F.2d 653, 661.

page 16

34.     *Tower v. Home Construction Co.,* 625 F.2d 1161, fn.4 (5th Cir. 1980)   page 9

35.     *Waterloo Leasing Co. v. McNat,* 620 S.W.2d 194 (Tex. App.. 1981)        page 9

36.     *Wiggins v. Avco Financial Services*, 62 F.Supp.2d 90, 94 (D.D.C. 1999)  page 8

37.     *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365, 374 (2008) page 7

EX PARTE APPLICATION FOR TRO AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION